UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| JUDICIAL WATCH, INC., et al., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) Cv. No. 99-2566 (TFH) | |
| | ) | |
| DEUTSCHE BANK, et al., | ) | |
| | ) | |
| Defendants. | ) | |

FILED
MAY 4 2000
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

## MEMORANDUM OPINION

This is a shareholder derivative action brought by plaintiffs Judicial Watch and Robert and Eileen Macrina against the PNC Bank and PNC Bank Mortgage Corp. of America, among others. Plaintiffs also allege a claim for civil conspiracy against a number of defendants, including President William Jefferson Clinton and Hillary Rodham Clinton. Three motions to dismiss are pending, as well as a motion for costs filed by the PNC defendants. Based upon the pleadings and the attachments thereto, the Court will grant defendants' motions to dismiss. The PNC defendants' motion for costs will be granted in part and denied in part.

## I. BACKGROUND

The original complaint in this case was filed on September 28, 1999 and an application for a preliminary injunction was filed on September 29, 1999. The original complaint named as defendants Deutsche Bank and its parent company, Bankers Trust (collectively, "Bankers Trust"), President William Jefferson Clinton and First Lady Hillary Rodham Clinton (collectively, "the Clintons"), Terrence McAulliffe, and John and Jane Does Nos. 1-10, who are

1

AO 72A
(Rev 8/82)



unknown officers and directors of Bankers Trust. The original complaint concerned a mortgage transaction between Bankers Trust and the Clintons. The Clintons sought the mortgage in order to finance the purchase of a personal residence in Chappaqua, New York. Plaintiff Judicial Watch, in its capacity as a Deutsche Bank shareholder, brought an action against Bankers Trust as a derivative suit under Rule 23.1 of the Federal Rules of Civil Procedure. The complaint also asserted various other claims against Bankers Trust and the individual defendants. The gravamen of the complaint was that defendant Terrence McAulliffe, a friend of the Clintons, was providing an allegedly illegal $1.35 million loan guarantee for the mortgage. See Complaint ¶ 45.

On October 14, 1999, the Clintons sent plaintiffs a letter stating that the Clintons were no longer pursuing the Bankers Trust mortgage, but had obtained alternative financing through the PNC Bank Mortgage Corp. See Letter from David Kendall to Larry Klayman, October 14, 1999 at 1. In contrast to the proposed transaction with Bankers Trust, the PNC transaction would not depend on the financial backing of Terrence McAulliffe. Id. On October 18, 1999, Judicial Watch, on behalf of shareholder Eithne M. Hartnett, served a written demand upon the Board of Directors of PNC Bank demanding that PNC Bank deny or rescind the home mortgage application by the Clintons by the close of business on October 19, 1999. The Hartnett demand asserted that the mortgage loan to the Clintons would violate the Federal Election Campaign Act ("FECA"), the federal criminal gratuity statute, 18 U.S.C. § 201, and the gratuity prohibition of the Ethics in Government Act, 5 U.S.C. § 7353. The Board of Directors (the "Board") of PNC Bank hired former Third Circuit Judge Arlin M. Adams to assess the merits of these allegations and to advise the Board accordingly. On October 28, Judge Adams issued a report to the Board. That report concluded that the mortgage loan to the Clintons would not violate any of these laws,

2

that it was processed in the regular course of PNC's mortgage business, that consummation of the loan would not breach any fiduciary duty, and that PNC Mortgage may legally proceed with the loan.[1]

On the morning of October 29, the Board of Directors found that it was in the best interests of PNC Bank to dismiss the litigation. The Board adopted a resolution rejecting Judicial Watch's demand and authorized counsel to move to dismiss any derivative claim on behalf of the corporation and the Board.

Before receiving the Board's response, on October 29, Judicial Watch filed an amended complaint, an application for temporary restraining order ("TRO") and an application for a preliminary injunction. Plaintiff's amended complaint includes all the claims asserted in the original complaint, except that the amended complaint also contains a derivative action allegation against PNC Bank, brought on behalf of PNC shareholders Roberta and Eileen Macrina. On October 29, this Court conducted a hearing on plaintiffs' TRO application. Based on the evidence presented at the hearing, including the Adams report, the Court denied plaintiffs' application, and dismissed its application for a preliminary injunction without prejudice. In

---

[1] Specifically, Judge Adams concluded:

> PNC would not violate the specific federal campaign finance laws or the bribery or gratuity laws cited in the demand letter by consummating the proposed mortgage loan transactions with the Clintons. For that reason, I do not believe that the demand letter asserts a sound legal basis to support its charges that consummation of the transaction would constitute a breach of fiduciary duty by the officers or directors of PNC Bank Corp. It is therefore my opinion that PNC Mortgage Corp. of America may proceed with the mortgage loan.

Adams Report at 14.

3

rejecting plaintiffs' application, the Court concluded that plaintiffs would have substantial problems on the merits, because it was unlikely that plaintiffs could (1) demonstrate under Pennsylvania law that it was unreasonable for the Board to decide that proceeding with this case was not in the best interests of PNC Bank; or (2) otherwise show that the loan violated federal law. The Court informed the parties that plaintiffs could renew their preliminary injunction application if defendants attempted to revive the Bankers Trust transaction.

PNC Mortgage and the Clintons finalized the mortgage loan on November 1, and the Clintons purchased the house in Chappaqua, New York. The purchase price was $1,700,000, of which the Clintons paid $340,000 down with the balance financed through a $1,360,000 home mortgage loan from PNC Mortgage. The mortgage loan has a term of 30 years with an initial interest rate of 7.5% for the first three years of the loan, adjustable each year thereafter. The loan carried no points and no origination fee. For the first three years of the loan, the Clintons will make monthly "interest only" payments of $8500 per month, and principal and interest payments thereafter. The loan is secured with a first lien on the Chappaqua property and residence. PNC Mortgage also obtained an appraisal concluding that the market value of the property is $1.7 million.

The following motions are pending: (1) Bankers Trust's motion to dismiss; (2) the PNC defendants' motion to dismiss; (3) the Clinton defendants' motion to dismiss; (4) the Clinton defendants' motion for a stay on the grounds of presidential immunity; and (5) the PNC defendants' motion for costs.[2] These motions are considered below.

---

[2] Also pending is plaintiffs' motion to treat application for preliminary injunction as conceded. By Order of October 29, 1999, this Court ordered the Clinton defendants to submit a response. They did so in a timely fashion. Plaintiffs' motion will therefore be denied.

## II. DISCUSSION

### A. Standard of Judgment

Dismissal under Fed. R. Civ. P. 12(b)(6) is appropriate only if it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations. Martin v. Ezeagu, 816 F. Supp. 20, 23 (D.D.C. 1993)(quoting Hishon v. King & Spalding, 467 U.S. 69, 73 (1984)); Conley v. Gibson, 355 U.S. 41, 45-46 (1957). In evaluating a motion to dismiss, the Court must construe the complaint in the light most favorable to plaintiff and give plaintiff "the benefit of all inferences that can be derived from the facts alleged." Schuler v. United States, 617 F.2d 605, 608 (D.C. Cir. 1979).

### B. Deutsche Bank and Bankers Trust's Motion to Dismiss

On November 4, 1999, counsel for defendants Deutsche Bank and Bankers Trust spoke with plaintiffs' counsel and explained: (1) that Bankers Trust had closed the Clintons' loan file by reason of the Clintons' withdrawal of their loan request; (2) that if the Clintons should ever want a loan from Bankers Trust, they would have to begin anew the residential loan application process; (3) that if they were to reapply, their loan application would be considered on its merits; and (4) that there is no secret understanding that the Clintons can come back to Bankers Trust and revive the terms of their former loan commitment. See Tufaro Decl. ¶ 5. Despite their best efforts, plaintiffs have failed to demonstrate a realistic possibility that the Bankers Trust-Clinton transaction may be revived. This matter is moot, and Bankers Trust and Deutsche Bank will be dismissed as defendants. See Southwestern Bell Tel. Co. v. Federal Communications Comm'n, 168 F.3d 1344, 1350 (D.C. Cir. 1999).[3]

---

[3] For substantially the same reasons, Terrence McAulliffe is dismissed from this case.

AO 72A
(Rev 8/82)

## C. PNC Defendants' Motion to Dismiss

The PNC defendants have moved to dismiss the amended complaint on a number of grounds. First, PNC argues that plaintiffs have failed to satisfy the threshold requirements under Pennsylvania law (which governs this case)[4] for bringing this derivative action. PNC asserts that plaintiffs' complaint fails in two ways. First, plaintiffs' complaint fails to meet the threshold requirements for a shareholder derivative action because (1) plaintiffs failed to make a proper demand on the Board, as the demand was made on behalf of Eithne M. Hartnett, who is not a party to this action; and (2) plaintiffs have not plead with specificity why the Board erred in rejecting their demand, despite the fact that Pennsylvania law requires them to do so. Second, PNC contends that the Board has properly exercised its authority under Pennsylvania law to terminate this lawsuit. Under Pennsylvania law, a derivative action should be dismissed if (1) the Board determined that this case is contrary to the interests of the corporation, (2) the Board was properly constituted, and (3) the Board was adequately informed and its ultimate conclusion was reasonable. PNC claims that the Board satisfied all three elements.

In Cuker v. Mikalauskas, 692 A.2d 1042, 1049 (Pa. 1997), the Pennsylvania Supreme Court adopted the ALI Principles of Corporate Governance §§ 7.02-7.10 & 7.13 as the law of Pennsylvania concerning shareholder derivative actions. Sections 7.03 and 7.04(a)(2) of the ALI Principles condition a shareholder's ability to bring a derivative action on (1) prior rejection of the demand by the Board of Directors, and (2) the plaintiff's pleading with particularity a legal basis for challenging the Board's decision.

---

[4] Because PNC Bank is a Pennsylvania corporation, Pennsylvania law governs both the substantive fiduciary duty claims raised in plaintiffs' amended complaint and issues regarding the prosecution and termination of those derivative claims. See Cowin v. Breler, 741 F.2d 410, 414 n.4 (D.C. Cir. 1984).

6

In respect to plaintiffs' prior rejection by the Board, the demand letter sent to the Board specifically states that the demand is made on behalf of shareholder Eithne M. Hartnett. See Letter from Larry Klayman to Sy Naqvi, October 18, 1999 at 1, 2. Ms. Hartnett is not a party to this case. While PNC shareholders Roberta and Eileen Macrina are co-plaintiffs, those individuals never served a demand letter upon the Board. In Kaplan v. Peat, Marwick, Mitchell & Co., 540 A.2d 726, 731 n.2 (Del. 1988), the Supreme Court of Delaware stated that a plaintiff in a derivative action "cannot effectively rely on an earlier demand made by another [shareholder] to satisfy [the demand requirement]." Although plaintiffs are correct that the foregoing statement was made in dicta, plaintiffs have cited no contrary authority to support their position. The Court therefore finds that Roberta and Eileen Macrina do not have standing to prosecute this derivative action.[5]

Defendants also argue that this case must be dismissed because, under Pennsylvania law, the decision by the Board to terminate the litigation is protected under the business judgment rule. In Cuker, the Supreme Court of Pennsylvania addressed the issue of "whether the business judgment rule permits the board of directors of a Pennsylvania corporation to terminate derivative lawsuits brought by minority shareholders." Cuker, 692 A.2d at 1045. The court set forth the following formulation of the business judgment rule:

> The business judgment rule insulates an officer or director of a corporation from liability for a business decision made in good faith if he is not interested in the subject of the business judgment, is informed with respect to the subject of the business judgment to the extent he reasonably believes to be appropriate under the circumstances, and rationally believes that the business judgment is in the best

---

[5] Because the Court finds that plaintiffs do not have standing to pursue this action under Pennsylvania law, it is unnecessary to reach PNC's argument that plaintiffs failed to plead with particularity a legal basis for challenging the Board's decision.

interests of the corporation.

Id. (citing ALI Principles § 4.01(c)). The court went on to consider the application of this rule in the derivative litigation context:

> Decisions regarding litigation by or on behalf of a corporation, including shareholder derivative actions, are business decisions as much as any other financial decisions. As such, they are within the province of the board of directors....Such business decisions of a board of directors are, unless taken in violation of a common law or statutory duty, within the scope of the business judgment rule.

Id. at 1048. The Cuker court outlined a "mechanism for implementation and judicial review of [a] board's decision" to terminate shareholder derivative actions. Id. The court stated that "[w]ithout considering the merits of an action, a court should determine the validity of the board's decision to terminate the litigation; if that decision was made in accordance with the applicable standard, then the court should dismiss the derivative action prior to litigation on the merits." Id. The "applicable standard" is satisfied when three criteria are met: (1) the board determines that the action is contrary to the best interests of the corporation and requests dismissal of the action; (2) the review and evaluation of the demand set forth at ALI § 7.09 are complied with; and (3) the board's determination is consistent with the applicable standard of review set forth at ALI § 7.10(a). Cuker, 692 A.2d at 1052-53.

Upon review of the Board's decision and the Adams report upon which the Board relied, it is clear that the Board complied with each of the above requirements in reaching its decision to dismiss the Hartnett demand. In respect to the first requirement, the Board determined that the litigation was not in the best interests of the PNC Bank, and formally requested its dismissal. See Resolution of Board of Directors, PNC Defs' Ex. 4. Second, the Board complied with § 7.09 of the ALI Principles. That section requires that the board or committee (2) "should be

composed of two or more persons, no participating member of which was interested in the action, and should as a group be capable of objective judgment in the circumstances"; (2) "should be assisted by counsel of its choice and such other agents as it reasonably considers necessary"; and (3) must base its determination upon a review and evaluation that was sufficiently informed to satisfy the standards applicable under § 7.10(a)." The first two elements are clearly satisfied, as there is nothing in the record to indicate that the Board was not properly constituted; that the Board members were otherwise interested in the transaction; or that the Board's reliance upon Judge Adams as its counsel is somehow problematic. In respect to the third element, the record is clear that "the [B]oard...was adequately informed under the circumstances and reasonably determined that dismissal was in the best interests of the corporation..." Cuker, 692 A.2d at 1054. Thus, § 7.10(a)(2) is satisfied in this case.

In light of the above, the Court finds that the PNC Bank Board's determination to dismiss this litigation is consistent with the requirements of the business judgment rule. For both this reason and the Macrinas' lack of standing to pursue this action, the PNC defendants' motion to dismiss will be granted.

**D. Clinton Defendants' Motion to Dismiss**

The Clinton defendants have moved to dismiss Count V of the amended complaint, which alleges that the Clintons engaged in a civil conspiracy to obtain an "unlawful home mortgage loan" in breach of duties owed by defendants John and Jane Does Nos. 1-20 to Deutsche Bank, Bankers Trust, PNC Bank, PNC Mortgage and their shareholders. Amended Complaint ¶ 86. Count V is the only count that names the Clintons as defendants.

The Clinton defendants' motion will be granted. Civil conspiracy is not an independent cause of action under the laws of Pennsylvania, the District of Columbia or New York. See

Wiggins v. District Cablevision. Inc., 853 F. Supp 484, 496 (D.D.C. 1994); In re: Orthopedic Bone Screw Products Litigation, __ F.3d __, 1999 WL 796833 (3d Cir. Oct. 7, 1999); Canto v. ITT Sheraton Corp., 865 F. Supp. 927, 934 (D.D.C. 1994), aff'd, 70 F.3d 637 (D.C. Cir. 1995) (table); In re Houbigant Inc., 914 F. Supp. 964, 989 (S.D.N.Y. 1995). Plaintiffs have not alleged an independent tort against the Clintons. The amended complaint is therefore deficient as a matter of law, and will be dismissed.[6]

**E. PNC Defendants Motion for Costs**

The PNC defendants have requested that this Court award them the costs of defending this action. Section 7.04(d)(1) of the ALI Principles states that a court:

> may award applicable costs, including reasonable attorney's fees and expenses, against a party, or a party's counsel...[a]t any time, if the court finds that any specific claim for relief or defense was asserted or any pleading, motion, request for discovery, or other action was made or taken in bad faith or without reasonable cause;...

ALI Principles, § 7.04(d)(1). The PNC defendants assert that plaintiffs undertook the following actions in bad faith or without reasonable cause: (1) plaintiffs' amended complaint adds Robert and Eileen Macrina as shareholder-plaintiffs, despite the fact that neither individual issued a demand upon the PNC defendants; (2) plaintiffs and their counsel filed the amended complaint before the PNC Bank Board of Directors had acted and the amended complaint does not address the Board's decision; (3) after this Court denied plaintiffs' application for a TRO, plaintiffs filed for a TRO with the United States Court of Appeals for the District of Columbia Circuit, even though that court had no jurisdiction to consider an appeal from the denial of a TRO; and (4)

---

[6] The President has also filed a motion for temporary stay on grounds of presidential immunity. As the Court will grant the Clinton defendants' motion to dismiss, the motion to stay is moot.

10

following the D.C. Circuit's denial of plaintiffs' motion, plaintiffs filed another emergency appeal for a TRO and a hearing with the Supreme Court, which was promptly denied. The PNC defendants claim that the above actions have caused them to incur substantial expenses in defending this suit.

Given the circumstances surrounding the October 29, 1999 TRO hearing, the Court does not find that plaintiffs acted in bad faith or without reasonable cause at the District Court level. As the Court recognized at the time, the termination of the Bankers Trust transaction and the substitution of the PNC mortgage presented the parties and the Court with a "moving target." See Transcript of October 29, 1999 Hearing, Afternoon Session, at 23. The PNC Board issued its resolution rejecting the Hartnett demand the same day the parties were scheduled to argue the TRO motion. Under these conditions, plaintiffs' legal errors do not appear to have been the product of bad faith or unreasonably poor judgment.

In respect to plaintiffs' appeals of this Court's decision to deny the TRO application, however, defendants are correct that those appeals were improper. Neither the Court of Appeals nor the United States Supreme Court has jurisdiction over the denial of a TRO. See OPM v. AFGE, 473 U.S. 1301, 1305 (Burger, D.C. Circuit Justice 1985). These appeals were therefore taken "without reasonable cause," and the PNC defendants are entitled to the costs of defending against the appeals. As both appeals were promptly dismissed, the Court does not anticipate that defendants' request for costs will be a substantial one.

11

## III. CONCLUSION

For the above stated reasons, the motions to dismiss in this case will be granted. The PNC defendants' motion for costs is granted in part and denied in part. An appropriate Order accompanies this Opinion.

April 25th, 2000

　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　／s／ Thomas F. Hogan
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　Thomas F. Hogan
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　United States District Judge

AO 72A
(Rev 8/82)